Filed 5/25/22; Certified for publication 6/21/22 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. MATTHEW ALEXIS BASLER, Defendant and Appellant. | D079033 (Super. Ct. No. SWF027442) |

APPEAL from an order of the Superior Court of Riverside County, Angel M. Bermudez, Judge. Reversed and remanded with directions.

Alex Coolman and Nancy Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Daniel Rogers, Assistant Attorneys General, Eric A. Swenson, Alan L. Amann and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

After having his first degree murder conviction reduced to second degree murder based on instructional *Chiu* error (*People v. Chiu* (2014) 59 Cal.4th 155), Matthew Alexis Basler filed a petition for resentencing under

Penal Code[1] section 1170.95. Following an evidentiary hearing at which Basler was not present, the trial court denied the petition, ruling (1) Basler was ineligible for relief under section 1170.95, subdivision (a) because he was not convicted of felony murder or murder under a natural and probable consequences theory, but was convicted of first degree premeditated murder; and (2) Basler could still be convicted of murder even after the changes made to sections 188 and 189 effective January 1, 2019. The court further found "as an independent factfinder" beyond a reasonable doubt that Basler committed first degree premeditated murder and that he harbored premeditated intent before killing the victim.

On appeal, Basler contends the trial court erred by its ruling. He maintains the court erroneously found he was not convicted of felony murder or murder under the natural and probable consequences theory, as that finding is contrary to this court's holding in his prior appeal (*People v. Basler* (Dec. 23, 2015, D068047) [nonpub. opn.]), which constitutes law of the case. He argues that in reviewing the merits of a section 1170.95 petition, the court is to determine whether *the jury* made a factual finding necessary for conviction under the elements currently required for a murder conviction, not act as an independent trier of fact for purposes of determining itself whether the trial evidence established the currently required elements of murder beyond a reasonable doubt. Basler points out that his original trial was by a jury, but the jury did not find he personally harbored an intent to kill. According to Basler, construing section 1170.95 to allow a court to make a finding as to an element of murder would violate his Sixth Amendment right to a jury trial. Basler further contends that the court violated his statutory and constitutional rights by conducting the evidentiary hearing in his

1    Undesignated statutory references are to the Penal Code.

absence without his waiver.  Finally, Basler contends the court reversibly erred by failing to address the merits of his section 1170.95 petition as to his attempted murder conviction, and Senate Bill No. 775 requires a remand for that determination.

The People concede the latter point, agreeing remand is appropriate for the trial court to determine Basler's eligibility for relief in connection with his attempted murder conviction.  We accept the concession, and remand the matter for the court to determine whether Basler has made a prima facie showing that he is entitled to relief under section 1170.95 as to his attempted murder conviction.  Because we further conclude Basler had a constitutional right to be present at his section 1170.95 evidentiary hearing or competently waive his presence, we must reverse the order and the court must hold a new evidentiary hearing on Basler's murder conviction, where Basler will either be present or provide a knowing, intelligent and voluntary waiver of his presence.  The court shall act as an independent factfinder, and may take new or additional evidence, if offered, to decide whether the People have met their burden of proof beyond a reasonable doubt under section 1170.95, subdivision (d)(3) that Basler is guilty under a still-valid theory of murder and thus ineligible for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize some of the facts from our unpublished opinion in Basler's direct appeal.  (Accord, *People v. Anderson* (2022) ___ Cal.App.5th ___ [2022 WL 1261422, *1].)  In December 2008, Ryan Armstrong died after being stabbed during a fight with Basler and his codefendants, James Wing Fung and Marvin Justin Black, in an alley outside a Temecula bar.  Two of Armstrong's friends were injured in the fight.  While all three defendants carried knives on them on the night in question, and while both Basler and

3

Fung were seen attacking Armstrong, there was no direct evidence that Basler personally stabbed him. No witnesses saw Fung stab Armstrong either.

The evidence at trial was that at the bar, Basler, Fung and Black reacted aggressively to Armstrong and his friends over the actions of an intoxicated girlfriend. They challenged Armstrong to a fight, and at some point a witness overheard Basler tell Fang and Black they should pretend to apologize to Armstrong and them "jump" him. Either Fang or Black said, "Yeah," and Fang nodded in agreement. When Basler and his codefendants left the bar in Basler's truck, Basler was upset and agitated, saying things like, "Fucking kid needs to stop running his mouth." Basler turned his truck toward the alley behind the bar and drove to the location where Armstrong and his friends were walking. Basler and Fung jumped out of the truck and ran toward Armstrong with Black following.

Basler and Fung attacked Armstrong, who fell to the ground. One of Armstrong's friends, J.R., saw someone who he thought was Basler standing over Armstrong and punching him. J.R. jumped on the person's back but was pulled off, felt a punch to his side, and fell to the ground. He saw blood beginning to fill inside his jacket. Black punched or kicked J.R. in the head while he was on the ground. Another person who was at the bar saw Basler standing over J.R. when he was on the ground. That person shoved Basler away and Basler swung a knife at him. Basler and Black also fought Armstrong's other friend who punched Black but was knocked down. Black's girlfriend saw Fung fighting other individuals who had Fung in a head lock. After the fight, Fung had large scrapes on his head.

Police later found Fung's knife near J.R.'s feet. Fung was included as a major donor to DNA found on the knife's handle, and Armstrong was a

4

potential major contributor to DNA found with apparent blood on the blade of the knife. J.R. was a potential minor contributor to DNA found on a portion of the knife blade.

At trial, Fung denied any plan to attack Armstrong or his friends. He said he, Basler and Black got out of Basler's truck after something hit the truck in the alley; that some unidentified person then jumped on his back and put him in a headlock. According to Fung, he was slammed to the ground, choked, and almost lost consciousness. He testified he took out his knife and stabbed the person several times in self-defense.

In 2012, a jury convicted Basler, Black and Fung of first degree murder (§ 187, subd. (a)), premeditated attempted murder (§§ 187, subd. (a), 664), and assault as a lesser offense to the charged assault by means of force likely to cause great bodily injury. Basler admitted an allegation that he suffered a prior serious felony conviction (§ 667, subd. (a)), that also constituted a prior strike (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)). The court sentenced him to prison for an aggregate indeterminate term of 64 years to life, plus a determinate term of 5 years.

Basler appealed, and this court reversed his first degree murder conviction. (*People v. Basler*, *supra*, D068047.) We held the trial court erred under *People v. Chiu, supra,* 59 Cal.4th 155 by instructing the jury on the natural and probable consequences theory of aiding and abetting first degree murder, and that the error prejudiced Basler and his codefendants. (*People v. Basler*, D068047.) In part, we reasoned: "[A] rational jury on this record could find that Basler intended only to assault Armstrong, not kill him. Although Basler was armed and witnesses saw Basler attacking Armstrong, no one saw Basler wielding a knife at that time. There was no direct evidence that Basler personally stabbed Armstrong. One witness . . . told

5

investigators that Basler pulled a knife out of his pocket after he had attacked Armstrong.  While [the witness] recalled the episode differently at trial, a rational jury could have credited [his] initial statement and believed that Basler did not wield a knife when he attacked Armstrong.  If Basler was not the perpetrator of Armstrong's murder, he could only have aided and abetted Fang.  On this record, however, a rational jury could have determined that Basler did not have the requisite mental state [for liability as a direct aider and abettor] given the lack of evidence regarding when Armstrong was stabbed and the circumstances surrounding the stabbing.  Although the evidence supports the rational inference that Basler acted with the required mental state . . . , the evidence also reasonably supports the opposite inference that Basler intended only to harm Armstrong, not kill him.  A rational jury could therefore have rejected the theories of [direct] perpetration and direct aiding and abetting and based its verdict solely on the legally improper theory of natural and probable consequences."

The People eventually accepted a reduction of Basler's murder conviction to second degree murder and his aggregate sentence was reduced to an indeterminate term of 44 years to life, plus a determinate term of five years.

In 2019, Basler, representing himself, filed a petition for resentencing under section 1170.95.  His petition states he was convicted of murder and attempted murder under the natural and probable consequences doctrine and he was entitled to relief under Senate Bill No. 1437.  The People responded to Basler's petition, asserting Senate Bill No. 1437 and the resulting statutes were unconstitutional.  Basler, now represented by counsel, filed a reply in support of his petition.

In February 2020, the trial court issued an order to show cause and, after additional briefing, held an evidentiary hearing.  Basler was not present.  His counsel submitted on the papers.  The court denied the petition, finding in its June 2021 order that Basler was convicted by a jury of premeditated first degree murder and Basler could still be convicted of murder even after the changes made to sections 188 and 189 effective January 1, 2019.

DISCUSSION

I. *Amendments to Felony Murder Rule and Natural and Probable Consequences Doctrine*

" 'Murder is the unlawful killing of a human being, or a fetus, with malice aforethought.' (§ 187, subd. (a).)  Although malice is thus an element of murder, prior law allowed defendants who did not act with malice to be liable for murder under certain circumstances." (*People v. Eynon* (2021) 68 Cal.App.5th 967, 972.)  "First, under the natural and probable consequence doctrine, a defendant who aids and abets a confederate in committing a crime (the target offense) is liable for other crimes committed by the confederate if those further crimes were natural and probable consequences of the target offense.  [Citation.]  Thus, under prior law, if the direct perpetrator of the target offense committed murder, and the murder was a natural and probable consequence of the target offense, then an aider and abettor of the target offense would be liable for the murder even if the aider and abettor did not act with malice.  [Citation.].  [¶]  Second, prior law provided that anyone who commits or attempts to commit a felony listed in section 189, subdivision (a), in which a death occurs is liable for first degree murder.  [Citation.]  In this way as well, prior law allowed for murder liability without malice—a principal in an enumerated felony that resulted in death would be liable for

7

first degree murder even if the principal did not act with malice." (*Eynon*, at p. 973.)

In 2014, the California Supreme Court held that an aider and abettor could not be convicted of first degree premeditated murder under the natural and probable consequences doctrine, but defendants could still be convicted of second degree murder under the natural and probable consequences doctrine. (*People v. Eynon, supra*, 68 Cal.App.5th at p. 973.)

Effective January 1, 2019, the law changed as to the "felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Senate Bill No. 1437; Stats. 2018, ch. 1015, § 1, subd. (f).) As amended, the law defining malice provides that except for first degree felony murder, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); *People v. Eynon, supra*, 68 Cal.App.5th at p. 974.) By this change, the Legislature intended that "[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015,

8

§ 1, subd. (g).)[2]

New section 1170.95 provides a procedure by which defendants whose cases are final can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.) Section 1170.95 as originally passed allowed a defendant to seek relief with respect to convictions for felony murder or murder under a natural and probable consequences theory. (Former § 1170.95, subd. (a); Stats. 2018, ch. 1015, § 4, subd. (a).) Effective January 1, 2022, the Legislature clarified that defendants convicted of attempted murder or manslaughter under a theory of felony murder and the natural and probable consequences doctrine are permitted the same relief. (Senate Bill No. 775; Stats. 2021, ch. 551, § 1, subd. (a).) Thus section 1170.95, subdivision (a) presently provides that persons "convicted of felony murder or murder under a natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (Stats. 2021, ch. 551, § 2.)

---

[2] Section 189 was also amended to provide that unless the victim is a peace officer killed in the line of duty, a participant in the perpetration or attempted perpetration of a felony in which a death occurs cannot be liable for first degree felony murder unless the participant (1) was the actual killer; (2) was not the actual killer, but with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subds. (e), (f); *People v. Eynon, supra,* 68 Cal.App.5th at p. 974.)

The trial court on receiving a petition must appoint counsel to represent the petitioner if the petitioner has requested counsel. (§ 1170.95, subd. (b)(3).) After the parties are given an opportunity to submit briefs it "shall hold a hearing to determine whether the petitioner has made a prima facie case for relief" and if the petitioner has done so, it must issue an order to show cause. (§ 1170.95, subd. (c).) Within 60 days of issuance of the order to show cause, the court must then hold a hearing "to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) At that hearing, the prosecution has the burden to prove beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under the amended laws. (§ 1170.95, subd. (d)(3).)

The admission of evidence at the evidentiary hearing "shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and

any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3).)

These procedures within section 1170.95 apply retroactively to defendants whose cases are not yet final. (*People v. Porter* (2022) 73 Cal.App.5th 644, 652.)

II. *Basler's Right to Be Present at 1170.95 Evidentiary Hearing*

Basler was not present at the May 21, 2021 evidentiary hearing on his section 1170.95 petition. Before it began, his attorney advised the court that he was currently in prison. The following colloquy took place:

"The court: Okay. And are you comfortable proceeding without his presence?

"[Defense counsel]: Yes, sir.

"The court: Has he authorized you to waive his presence, or is it even required as a matter of law?

"[Defense counsel]: I don't think it's required as a matter of law." The court proceeded with the hearing.

Citing *People v. Simms* (2018) 23 Cal.App.5th 987, Basler contends that where eligibility for relief under section 1170.95 requires an evidentiary hearing, a defendant has a right to be present at that hearing absent a valid waiver. He maintains that as a type of sentencing hearing, it is a critical stage of the prosecution.

The People respond that any violation of Basler's right to be personally present was harmless beyond a reasonable doubt, as his presence would not have made a difference to the hearing's outcome. They state: "Counsel for both sides made brief oral arguments at the hearing, but no additional evidence was presented. There is no indication in the record that the defense

11

ever contemplated having [Basler] testify or presenting other evidence. None of [Basler's] briefs mentioned other evidence, and a minute order dated December 4, 2020, reflects that defense counsel 'indicates no new evidence to be presented.' " They point out Basler "does not explain how his presence at the hearing would have made any difference at all" and he "does not say what, if any, evidence he might have presented at the hearing." They distinguish *People v. Simms*, *supra*, 23 Cal.App.5th 987 as involving "a discrete factual issue that was not explored at trial and that the defendant logically might have information about."

"A defendant has the constitutional right to be personally present in court 'where necessary to protect the defendant's opportunity for effective cross-examination, or to allow him to participate at a critical stage and enhance the fairness of the proceeding.' " (*People v. Flinner* (2020) 10 Cal.5th 686, 710; see also *People v. Powell* (2018) 6 Cal.5th 136, 147; *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 465.) The right is guaranteed by the Sixth and Fourteenth Amendments to the federal Constitution, as well as article 1, section 15 of the California Constitution. (*People v. Blacksher* (2011) 52 Cal.4th 769, 798-799.) The state constitutional right to be present is generally coextensive with the federal due process right. (*Powell*, at p. 147; *Blacksher*, at p. 799.)

Critical stages of a defendant's criminal prosecution include the imposition of sentence, a sentence modification hearing, and resentencing. (See *People v. Nieves* (2021) 11 Cal.5th 404, 508; *People v. Guerrero* (2022) 76 Cal.App.5th 329, 335 [court erred by proceeding in defendant's absence with resentencing hearing where it was to consider youth-related mitigating factors when exercising its discretion to select an appropriate sentence]; *People v. Cutting* (2019) 42 Cal.App.5th 344, 347-348 [defendant had federal

constitutional right to be present at resentencing hearing following a change in the law applicable to an enhancement initially imposed by the lower court]; *People v. Simms*, *supra*, 23 Cal.App.5th at pp. 996-997 [defendant's right to be personally present "extends to sentencing and resentencing proceedings"; contested factual issues in Proposition 47 eligibility determination implicated defendant's constitutional right to be present]; *People v. Sanchez* (2016) 245 Cal.App.4th 1409, 1414, citing *People v. Robertson* (1989) 48 Cal.3d 18, 60, 62; see *People v. Rouse* (2016) 245 Cal.App.4th 292, 300 [where court is expected to exercise its sentencing discretion and restructure the entire sentencing package, the proceeding is properly characterized as a critical stage]; §§ 977, subd. (b)(2) [defendant "shall be personally present . . . at the time of the imposition of sentence"], 1193 ["defendant shall be personally present when judgment is pronounced," unless presence is properly waived].)  The defendant can waive his right to be present, but the waiver must be " 'voluntary, knowing and intelligent.' " (*Nieves*, at p. 508; *People v. Davis* (2005) 36 Cal.4th 510, 532 ["At a minimum, there must be some evidence that defendant understood the right he was waiving and the consequence of doing so"; defense counsel's statement he had discussed the hearing with defendant and defendant would waive his presence was not sufficient to establish a knowing and intelligent waiver as there was no evidence counsel informed the defendant of his right to attend, nor evidence that defendant understood he would be unable to contribute to the discussion of certain evidence by absenting himself from the hearing].)

These rights attached here, where Basler's eligibility for relief under section 1170.95 required an evidentiary hearing.  Basler had already made out a prima facie case under subdivision (c) of section 1170.95, entitling him to an evidentiary hearing at which the court was to "determine whether to

13

vacate the murder [or] attempted murder . . . conviction and to recall the sentence and resentence the petition on any remaining counts *in the same manner as if the petitioner had not previously been sentenced*, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1), italics added.) At that hearing the prosecution bore the burden to prove "beyond a reasonable doubt" that Basler was ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The statute authorizes both parties to "offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).) This is "akin to a plenary sentencing hearing" and thus a "critical stage" in the criminal process even though it prevents imposition of a sentence greater than that originally imposed. (Accord, *People v. Rouse, supra*, 245 Cal.App.4th at pp. 299-300 [resentencing hearing on a section 1170.18 petition is akin to plenary sentencing hearing and a critical stage in the criminal process to which Sixth Amendment right to counsel attached even though statutory scheme prevents imposition of a sentence greater than originally imposed].) None of the People's arguments—generally discussing chambers or bench discussions outside the jury's presence—meaningfully address or challenge these principles.

Our conclusion is supported by the discussion in *People v. Lewis* (2021) 11 Cal.5th 952, in which the California Supreme Court addressed and rejected the defendant's contention that he was constitutionally entitled to counsel at the section 1170.95, subdivision (c) stage to decide whether he made a prima facie showing for relief. (*Id*. at p. 972.) The *Lewis* court observed there was no constitutional right to appointed counsel in state postconviction proceedings. (*Id*. at p. 973.) But, it went on to explain that " 'if a [habeas] petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of

14

counsel is demanded by due process concerns.' [Citation.] When 'an indigent petitioner has stated facts sufficient to satisfy the court that a hearing is required, his claim can no longer be treated as frivolous and he is entitled to have counsel appointed to represent him.' " (*Ibid*.) *Lewis* cited in part to *People v. Rouse, supra*, 245 Cal.App.4th 292 for the proposition that a due process right to counsel at a Proposition 47 resentencing hearing "arose *after* the '[d]efendant passed the eligibility stage.' " (*Lewis,* at p. 973, quoting *Rouse*, at p. 299.) So it is here, where Basler stated facts sufficient to state a prima facie case warranting an evidentiary hearing and implicating his Sixth Amendment rights attaching to critical stages in the process. Basler had state and federal constitutional rights to be personally present at his section 1170.95, subdivision (d) resentencing hearing, or else provide a knowing, intelligent and voluntary waiver of those rights.

We turn to whether violation of Basler's right to be personally present prejudiced him. A violation of the federal constitutional right must be assessed for prejudice under *Chapman v. California* (1967) 386 U.S. 18, 24; we ask whether his absence was harmless beyond a reasonable doubt. (*People v. Nieves, supra*, 11 Cal.5th at pp. 508-509; *People v. Mendoza* (2016) 62 Cal.4th 856, 902; *People v. Robertson, supra*, 48 Cal.3d at p. 62; *People v. Davis, supra*, 36 Cal.4th at p. 532; *People v. Blacksher, supra*, 52 Cal.4th at p. 799 [defendant bears burden of demonstrating his absence resulted in prejudice or denied his right to a fair hearing]; *People v. Simms, supra*, 23 Cal.App.5th at p. 998 [prejudice standard for federal constitutional violation of right to be present at contested eligibility proceeding is whether appellate court can conclude beyond a reasonable doubt that the deprivation did not affect the outcome of the proceeding].

Basler argues it is speculative to say his presence would not have affected the outcome; he suggests he should be given the opportunity to hear the People's evidence and then decide whether to exercise his right to testify and present other evidence. We agree the record does not permit us to conclude Basler's absence was harmless beyond a reasonable doubt. Basler's counsel did not indicate that he had discussed the section 1170.95 evidentiary hearing with Basler or that Basler knew he had the right to be present. Counsel did not present any waiver from Basler, instead representing to the court that a waiver was not required as a matter of law. Nothing in the record suggests Basler expressed any desire to waive his right to be present, much less that he knowingly, intelligently and voluntarily did so. The entire purpose of the section 1170.95 resentencing hearing was for the court to consider whether to vacate Basler's conviction and recall Basler's sentence, including by reviewing the record and taking new evidence, if offered, on the issue of Basler's actions and mens rea on the night in question. The question may well turn on disputed issues of fact "about which [Basler]—as a participant in the events in question—may well have had something to say." (*People v. Simms*, *supra*, 23 Cal.App.5th at p. 998.) We agree that, as in *Simms*, "[t]he trial court may, or may not, have chosen to believe what [Basler] might have said, if he said anything, but we cannot conclude beyond a reasonable doubt that his presence at the hearing would not have affected the outcome." (*Ibid.*; see also *People v. Cutting*, *supra*, 42 Cal.App.5th at p. 350 [holding defendant's exclusion from resentencing hearing was not harmless beyond a reasonable doubt: "Cutting may have offered mitigating factors that arose after his original sentencing; he may have expressed remorse; he may have made a plea for leniency. [Citation.] While the trial court may or may not have chosen to believe what Cutting might have said, if

he said anything, we cannot conclude beyond a reasonable doubt that his presence at the hearing would not have affected the outcome"]; compare *People v. Fisher* (2009) 172 Cal.App.4th 1006, 1014-1015, [defendant's absence during doctor's testimony at civil commitment hearing was harmless beyond a reasonable doubt where defense counsel thoroughly cross-examined doctor, and defendant was thereafter present and had full and fair opportunity to rebut doctor's testimony].)

According to the People, "whether [Basler] premeditated and deliberated Armstrong's murder involved the consideration of all of the evidence presented at trial, and there is no indication that [Basler] had any additional evidence to offer in this regard." But Basler's decision not to testify at trial is not dispositive on the prejudice suffered by his absence at the section 1170.95 evidentiary hearing, particularly given the new focus on Basler's mental state and the court's ability to consider new or additional evidence on the point. Further, we decline to conclude that Basler's silence in his appellate briefing on the evidence he may have presented at the hearing establishes beyond a reasonable doubt that his presence would not have led to a different outcome. Apart from presenting evidence, he may have given input to his counsel on the People's presentation and arguments, resulting in his counsel drawing different inferences from the trial evidence or doing more than submitting on the papers. In any event, we agree Basler is entitled to hear the People's evidence and argument on the point, then decide whether to testify and/or present additional or new mitigating evidence on his behalf.

### III. *Basler's Attempted Murder Conviction*

As we have explained, Senate Bill No. 775 "clarifies" that "persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted

17

the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).) The People concede remand is appropriate for the trial court to determine Basler's eligibility for relief in connection with his attempted murder conviction. Given the new law, on remand the trial court must reconsider Basler's petition and determine whether he has stated a prima facie case showing eligibility for resentencing as to his attempted murder conviction. (*People v. Porter*, *supra*, 73 Cal.App.5th at pp. 652-653.)

IV. *Standard at Evidentiary Hearing*

Because we remand for the court to conduct a new evidentiary hearing, we briefly touch on Basler's contention about the court's use of an independent factfinder standard in considering his section 1170.95 petition.[3] He maintains that in reviewing the merits of the petition, "the trial court is reviewing a judgment to determine if the jury made a factual finding necessary for conviction under the elements currently required for a murder conviction" and "is not acting as an independent trier of fact for purposes of determining itself whether the evidence at trial established the currently-required elements of murder beyond a reasonable doubt." He suggests that because the jury in his case did not make a finding that he personally harbored an intent to kill, but instead was allowed to base its murder conviction on something other than his intent to kill, that standard cannot be met. Basler acknowledges that the People can rely on the record of conviction

---

[3] Basler contends the court erred by finding he was not convicted of murder under the natural and probable consequences theory and that no *Chiu* error occurred, because this court's holding that such error did occur is law of the case. The People concede that point, and focus on the correctness of the court's finding that Basler could still be convicted of murder under the new law.

or offer new and additional evidence, but maintains whatever the People rely on, they "must show beyond a reasonable doubt that *the jury* found that the defendant was the actual killer or acted with the intent to kill if the defendant was convicted of first degree murder as a direct aider and abettor."

We reject Basler's argument that the trial court is not to act as an independent factfinder when deciding whether the People have met their burden of proof at a section 1170.95 evidentiary hearing. The structure of section 1170.95 compels this conclusion: the Legislature expressly permits presentation of new and additional evidence, and places the burden on the People to show Basler "is ineligible for resentencing"—i.e., to present evidence of the elements of murder rendering Basler guilty of murder under current law—such that factfinding is necessary. Restricting the lower court's review of what the *jury in his original trial* did amounts to an appellate standard. As Basler concedes, the Legislature has expressly repudiated use of a substantial evidence standard to ascertain whether the People meet their burden of proof at the section 1170.95 evidentiary hearing, so the trial court may not rely on this court's sufficiency of the evidence finding to reach its conclusion. (§ 1170.95, subd. (d)(3) ["A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing"].)

Nor does such a standard violate his right to a jury trial as Basler suggests. He is not a defendant charged anew with murder and constitutionally entitled to a jury trial. (Accord, *People v. James* (2021) 63 Cal.App.5th 604, 609 ["Section 1170.95 is 'an act of lenity' that requires, under specified circumstances, reduction of the offense for which [the defendant] was properly convicted. The constitutional right to a jury trial

19

does not require a jury determination of those circumstances. '[T]he retroactive relief . . . afforded by Senate Bill [No.] 1437 is not subject to Sixth Amendment analysis' "].)

DISPOSITION

The order is reversed and the matter remanded for the trial court to (1) determine whether Basler has made a prima facie showing of eligibility for relief under Penal Code section 1170.95 in connection with his attempted murder conviction and (2) hold a new Penal Code section 1170.95 evidentiary resentencing hearing on Basler's murder conviction(s), where Basler will either be present or provide a knowing, intelligent and voluntary written waiver of his presence.

O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


HALLER, J.

20

Filed 6/21/22

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079033 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF027442) |
| MATTHEW ALEXIS BASLER, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed May 25, 2022, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.


HUFFMAN, Acting P. J.

Copies to:  All parties